## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| KONTROLFREEK, LLC, an Alabama limited liability company,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>JACQUES WEBSTER p/k/a TRAVIS SCOTT, an individual; CACTUS JACK PUBLISHING, LLC, a Delaware limited liability company; CACTUS JACK RECORDS LLC, a California limited liability company; CACTUS JACK ENTERPRISES, LLC, a California limited liability company; CACTUS JACK MANAGEMENT, LLC, a California limited liability company,<br><br>　　　　Defendants. | Case No. _____ |

## **COMPLAINT**

Plaintiff KontrolFreek, LLC ("KontrolFreek") files this Complaint against

Defendant Jacques Webster a/k/a Travis Scott ("Travis Scott"); and Defendants

Cactus Jack Publishing, LLC, Cactus Jack Records LLC, Cactus Jack Enterprises,

LLC, and Cactus Jack Management, LLC (collectively "Cactus Jack") (collectively,

with Travis Scott, "Defendants") for copyright infringement pursuant to

17 U.S.C. § 501, trade dress infringement and false representations pursuant to the

Lanham Act, 15 U.S.C. §§ 1051, et seq., and unfair competition under the common

laws of the State of Georgia, and for cause would show as follows:

### THE PARTIES

1.     Plaintiff KontrolFreek is an Alabama limited liability company with a

principal place of business located at 2020 Howell Mill Road NW, Suite C-119,

Atlanta, GA, 30318.

2.     On information and belief, Jacques Webster p/k/a Travis Scott is an

individual residing in California at 9737 Rim Rock Cir, Loomis, California, 95650.

3.     On information and belief, Defendant Cactus Jack Publishing, LLC is

a Delaware limited liability company with a principal place of business located at

1900 Avenue of the Stars, 25th Floor, Los Angeles, California 90067.

4.     On information and belief, Defendant Cactus Jack Records LLC, is a

California limited liability company with a principal place of business located at

595 Lincoln Avenue, Suite 200, Pasadena, California 91103.

5.     On information and belief, Defendant Cactus Jack Enterprises, LLC,

is a California limited liability company with a principal place of business at 9255

Sunset Boulevard, Second Floor, West Hollywood, California 90069.

6.      On information and belief, Defendant Cactus Jack Management, LLC is a California limited liability company with a principal place of business located at 9255 Sunset Boulevard, Second Floor, West Hollywood, California 90069.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over KontrolFreek's copyright infringement, trade dress infringement, and false representations claims pursuant to 28 U.S.C. §§ 1331 and 1338(a) because these claims involve federal questions related to infringement arising under federal trademark and copyright laws. This Court also has subject matter jurisdiction over the substantial and related claims arising under the laws of the State of Georgia pursuant to 28 U.S.C. §§ 1338(b) and 1367.

8.      This Court has personal jurisdiction over Defendant Travis Scott because he has conducted business in Georgia for multiple years and continues to do so. Travis Scott's professional connections in Georgia include a contractual relationship with an Atlanta-based record label. Travis Scott also collaborates with Atlanta-based artists. In 2019 alone, Travis Scott performed in Atlanta at least three times: at the Super Bowl Halftime Show at Mercedes-Benz Stadium in January 2019, at State Farm Arena in March 2019, and at Music Midtown Festival in September 2019.

9.     This Court also has personal jurisdiction over Defendant Travis Scott because, on information and belief, the concert in connection with which Travis Scott launched his infringing gaming-related merchandise was virtually performed through a platform that reached many customers in the State of Georgia.

10.     This Court has personal jurisdiction over Defendant Cactus Jack Publishing, LLC because the company has transacted business in Georgia for multiple years and continues to do so; because the company committed a tortious act within the State of Georgia; and because the company committed a tortious injury in the State of Georgia caused by an act or omission outside of the State of Georgia, and the company regularly does and solicits business and derives substantial revenue from goods consumed and services rendered in the State of Georgia.

11.     This Court has personal jurisdiction over Defendant Cactus Jack Records LLC because the company has transacted business in Georgia for multiple years and continues to do so; because the company committed a tortious act within the State of Georgia; and because the company committed a tortious injury in the State of Georgia caused by an act or omission outside of the State of Georgia, and the company regularly does and solicits business and derives substantial revenue from goods consumed and services rendered in the State of Georgia.

65733101v.8

12.     This Court has personal jurisdiction over Defendant Cactus Jack

Enterprises, LLC because the company has transacted business in Georgia for

multiple years and continues to do so; because the company committed a tortious

act within the State of Georgia; and because the company committed a tortious

injury in the State of Georgia caused by an act or omission outside of the State of

Georgia, and the company regularly does and solicits business and derives

substantial revenue from goods consumed and services rendered in the State of

Georgia.

13.     This Court has personal jurisdiction over Defendant Cactus Jack

Management, LLC because the company has transacted business in Georgia for

multiple years and continues to do so; because the company committed a tortious

act within the State of Georgia; and because the company committed a tortious

injury in the State of Georgia caused by an act or omission outside of the State of

Georgia, and the company regularly does and solicits business and derives

substantial revenue from goods consumed and services rendered in the State of

Georgia.

14.     Venue is proper in this judicial district pursuant to

28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim

65733101v.8

occurred in Atlanta, Georgia, and because Defendants are subject to personal jurisdiction in this district.

## FACTUAL BACKGROUND
### KontrolFreek's Business

15.     KontrolFreek is well-known in the gaming world for introducing thumbsticks, grips, and other novel gaming accessories, known as PERFORMANCE GAMING GEAR™, that enhance the player experience. KontrolFreek's products are available in over 9,000 stores across 40 countries. KontrolFreek also created and developed FREEKNATION®, an international community of gamers that has grown to include over four million members.

16.     KontrolFreek engages directly with consumers through its eSports team sponsorship programs. Professional gamers and hobbyists alike recognize KontrolFreek as the source of the company's high-quality gaming products offered in connection with its trademarks and protected trade dress.

17.     In addition to its 4 million FREEKNATION® members, KontrolFreek has nearly 1 million followers on Twitter and half a million followers on Facebook, over 600,000 followers on Instagram, and over 30,000 fans on Twitch.

18.     KontrolFreek engages in licensing relationships with major brands in the gaming world as part of both its sponsorship activities and its product design

and marketing. For example, its thumbsticks are often co-marketed to millions of gamers as part of new video game launches.

19.     KontrolFreek recently joined forces with other well-known brands in the gaming industry to produce COV-AID, a 10-hour streaming charity event that featured celebrity athletes, musicians, and actors.

20.     Since its founding in 2009, KontrolFreek has invested significant time and financial resources to develop a strong reputation and goodwill in its KONTROLFREEK® mark, the look and feel of its thumbsticks ("KontrolFreek Trade Dress"), and other valuable marks and trade dress.

21.     KontrolFreek was the first in the gaming industry to offer thumbstick attachments for video game controllers. KontrolFreek remains the industry leader in the gaming gear and thumbstick arena with its unique and highly collectible product, which embodies the KontrolFreek Trade Dress.

22.     As a result of KontrolFreek's promotion of the KontrolFreek thumbsticks embodying the KontrolFreek Trade Dress, consumers have come to know and recognize KontrolFreek's valuable trade dress, and have come to associate KontrolFreek with high-quality products. The KontrolFreek Trade Dress, and the goodwill associated with it, are of substantial value to KontrolFreek.

65733101v.8

23.   The KontrolFreek Trade Dress comprises a combination of the

following elements:

a)   A base with curved prongs;

b)   A stem that is narrower than the base and top;

c)   A base and stem that appear to be smooth and reflective;

d)   A top that appears to be soft and non-reflective;

e)   A circular top;

f)   Vibrant color on the top;

g)   Contrasting colors for the base and stem (for example, orange top

contrasted with black base and stem or purple top contrasted with

white base and stem); and

h)   Ornamentation or design on the top.

| KontrolFreek Trade Dress Top View | KontrolFreek Trade Dress Side View | KontrolFreek Trade Dress Angled View |
| --- | --- | --- |
|  |  |  |

24.   KontrolFreek often incorporates the key colors orange and purple into

its KontrolFreek Trade Dress, as seen in Exhibit A.

65733101v.8

25.     KontrolFreek also owns original, copyright-protected photographs of its gaming accessory products, which it uses in advertising and marketing materials ("KontrolFreek Photographs").

26.     The copyright-protected KontrolFreek Photographs are used to advertise KontrolFreek products on KontrolFreek's own website, as well as on many different e-commerce platforms around the world.

27.     The copyright-protected KontrolFreek Photographs are also featured on social media and used throughout other marketing and media outlets.

28.     In addition to its distinctive KontrolFreek Trade Dress and copyright-protected KontrolFreek Photographs, KontrolFreek packages its products in distinctive boxes. KontrolFreek's distinctive boxes feature a combination of unique designs and original text ("KontrolFreek Packaging").

## Defendants' Unlawful Activities

29.     Defendant Travis Scott is a well-known musician and performer. On information and belief, many of Defendant Travis Scott's fans and audience members are professional and amateur gamers.

30.     In April 2020, Defendant Scott performed a multi-day virtual concert through the popular game Fortnite. On information and belief, Defendant Scott's Fortnite performance attracted an estimated 12 million people.

9

31.     On information and belief, Defendant Scott and his co-Defendants, Cactus Jack, were looking for an opportunity to offer Cactus Jack-branded gaming merchandise as part of a tie-in with Defendant Scott's performance on Fortnite.

32.     On information and belief, simultaneous with the Fortnite concert, Defendants began advertising and offering for sale merchandise branded with Cactus Jack's trademarks.

33.     Among the merchandise Defendants advertised and offered for sale in connection with the Fortnite concert were Cactus Jack-branded thumbsticks ("Cactus Jack Thumbsticks").

34.     Defendants adopted and used the distinctive KontrolFreek Trade Dress in creating Defendants' Cactus Jack Thumbsticks.

35.     On information and belief, Defendants reproduced KontrolFreek's copyright-protected KontrolFreek Photographs of KontrolFreek's gaming products. Thereafter, Defendants modified the KontrolFreek Photographs to create Defendants' derivative photographs ("Infringing Photographs").

36.     Defendants' Infringing Photographs feature KontrolFreek's Black Ops Thumbsticks, which contain KontrolFreek's distinctive KontrolFreek Trade Dress.

37.     There are multiple indications that Defendants reproduced the copyright-protected KontrolFreek Photographs. For example, the reflections of

10

light on the controllers in the Infringing Photographs are identical to the reflections of light on the controllers in the copyright-protected KontrolFreek Photographs.

38.    On information and belief, Defendants also modified the KontrolFreek Photographs by superimposing the Cactus Jack logo/design over the top of the KontrolFreek thumbstick in the Infringing Photographs.

39.    In at least one of the Infringing Photographs, Defendants also altered the color of the thumbsticks from orange to purple. *See* below and Exhibit B.



| KontrolFreek Photographs | Infringing Photographs |
| --- | --- |

65733101v.8

40.     After creating the Infringing Photographs, Defendants publicly displayed the Infringing Photographs on social media, including but not limited to, on Defendants Cactus Jack's Instagram account.

41.     On information and belief, Defendants have used the Infringing Photographs in advertisements for the Defendants' Cactus Jack Thumbsticks.

42.     KontrolFreek has never authorized Defendants to use, reproduce, publicly display, or create derivative works based on, the copyright-protected KontrolFreek Photographs.

43.     Defendants' reproduction, public display, and creation of derivative works based on the copyright-protected KontrolFreek Photographs without KontrolFreek's authorization constitutes copyright infringement.

44.     In addition to the unauthorized reproduction and use of the copyright-protected KontrolFreek Photographs, the Infringing Photographs use and feature the distinctive KontrolFreek Trade Dress embodied in the KontrolFreek thumbsticks.

45.     Consumers saw the Infringing Photographs on Defendants' Cactus Jack's Instagram account and other social media platforms. Consumers commented that the Cactus Jack Thumbsticks appeared to be very similar to KontrolFreek's Products.

46.     Consumers also commented online that they were excited to see Defendant Travis Scott and KontrolFreek working together, when that was not the case. *See* Exhibit C.

47.     On information and belief, consumers were confused into believing that KontrolFreek had manufactured and distributed the Defendants' Cactus Jack Thumbsticks, when KontrolFreek had not.

48.     Reproduced below are pictures of Defendants' infringing Cactus Jack Thumbsticks and representative comments by consumers. *See also* Exhibit C.





49.     As a result of Defendants' misappropriation of the KontrolFreek Trade Dress, consumers were confused as to the source of Defendants' Cactus Jack Thumbsticks.

50.     By displaying the Infringing Photographs showing thumbsticks using and featuring the KontrolFreek Trade Dress, Defendants induced consumers to purchase the infringing Cactus Jack Thumbsticks under the incorrect assumption that KontrolFreek was the source of the Cactus Jack Thumbsticks.

51.     On information and belief, after the Fortnite concert, fans expressly mentioned the KONTROLFREEK® brand name in response to Defendants' launch of the Cactus Jack Thumbsticks.

52.     On information and belief, as of May 2020, Defendants were already offering the infringing Cactus Jack Thumbsticks for sale to consumers.

53.     On information and belief, as of May 2020, Defendants had not yet begun to manufacture or have a third party manufacture the infringing Cactus Jack Thumbsticks. On information and belief, as of May 2020, Defendants had not even chosen a manufacturer for the infringing Cactus Jack Thumbsticks.

54.     In or around May 2020, KontrolFreek contacted the Defendants about Defendants' unauthorized use and misappropriation of KontrolFreek intellectual

property. During a phone call, Defendants asked if KontrolFreek would be willing to manufacture the Cactus Jack Thumbsticks for Defendants, and at no cost.

55.     The parties did not speak again after May 2020.

56.     Thereafter, KontrolFreek continued investigating the nature and scope of Defendants' violations of KontrolFreek's intellectual property.

57.     On information and belief, in July 2020, consumers began receiving the infringing Cactus Jack Thumbsticks that they had purchased in April 2020.

58.     Consumers complained online about the delay between when they purchased the Cactus Jack Thumbsticks and when they actually received the Cactus Jack Thumbsticks. *See* Exhibit D.

59.     Consumer also complained online about the poor quality of the Cactus Jack Thumbsticks. One consumer even commented that the Cactus Jack Thumbsticks were not like "normal kontrol freeks" [sic]. *Id.*

60.     On information and belief, consumers incorrectly attributed the long delay in receiving the infringing Cactus Jack Thumbsticks to KontrolFreek. On information and belief, consumers were already confused by the Infringing Photographs into believing that KontrolFreek had made, endorsed, or sponsored the infringing Cactus Jack Thumbsticks, or that KontrolFreek was otherwise

15

affiliated with Defendants and their infringing Cactus Jack Thumbsticks, when that was not the case.

61.     On information and belief, consumers also incorrectly attributed the poor quality of the infringing Cactus Jack Thumbsticks to KontrolFreek. On information and belief, consumers were already confused by the Infringing Photographs into believing that KontrolFreek had made, endorsed, or sponsored the infringing Cactus Jack Thumbsticks, or that KontrolFreek was otherwise affiliated with Defendants and their infringing Cactus Jack Thumbsticks, when that was not the case.

62.     Defendants adopted and used the KontrolFreek Trade Dress to create infringing thumbsticks that embody the KontrolFreek Trade Dress.

63.     The Cactus Jack Thumbsticks are confusingly similar to the KontrolFreek Trade Dress contained in the KontrolFreek thumbsticks.

64.     The Defendants' adoption and use of the KontrolFreek Trade Dress served to further confuse consumers who purchased Defendants' infringing Cactus Jack Thumbsticks, under the incorrect assumption that KontrolFreek had made, endorsed, or sponsored the infringing Cactus Jack Thumbsticks, or that KontrolFreek was otherwise affiliated with Defendants and their infringing Cactus Jack Thumbsticks, when that was not the case.

16

65.     In or around July 2020, KontrolFreek discovered that Defendants had also reproduced KontrolFreek's copyright-protected packaging design for KontrolFreek's products ("KontrolFreek Packaging"). Specifically, Defendants copied KontrolFreek's copyright-protected design elements and text in the KontrolFreek Packaging for use in Defendants' packaging of their infringing thumbsticks.

66.     Defendants' Cactus Jack packaging ("Infringing Packaging") is substantially or strikingly similar to the copyright-protected KontrolFreek Packaging. *See* Exhibit E. Like KontrolFreek's Packaging, Defendants' Infringing Packaging is composed of a black background with predominantly white lettering.

67.     Like KontrolFreek's Packaging, Defendants' Infringing Packaging contains KontrolFreek's slogan "GIVES GAMERS AT ALL LEVELS A COMPETITIVE ADVANTAGE"™.

68.     Like KontrolFreek's Packaging, Defendants' Infringing Packaging displays KontrolFreek's slogan in all capital letters, and depicts the slogan at the top of the packaging. Like KontrolFreek's Packaging, Defendants' Infringing Packaging uses a similar font for KontrolFreek's slogan.

69.     Defendants' Infringing Packaging includes identical text to the KontrolFreek Packaging below the placement of KontrolFreek's slogan GIVES

GAMERS AT ALL LEVELS A COMPETITIVE ADVANTAGE™: "Combining ergonomics and innovative design."

70.     Defendants' Infringing Packaging includes identical bullet points to the KontrolFreek Packaging, arranged in the same order: "IMPROVE ACCURACY," "ENHANCE GRIP," "INCREASE COMFORT."

71.     Defendants' Infringing Packaging includes a reproduction of the drawing of a controller in white with black thumbsticks. The drawing is located on the bottom right-hand corner of Defendants' Infringing Packaging, in the same location as a similar drawing of a controller in the KontrolFreek Packaging.

72.     At the time that Defendants began designing their Infringing Packaging, Defendants were aware of KontrolFreek and, on information and belief, had access to the KontrolFreek Packaging.

73.     Defendants' Infringing Packaging violates KontrolFreek's copyrights in the KontrolFreek Packaging.

74.     Defendants' actions constitute intentional copyright infringement and willful and unlawful attempts to confuse the public and interfere with KontrolFreek's established business.

75.     Defendants' actions are also likely to deceive consumers into believing that Defendants' Cactus Jack Thumbsticks originate from or are sponsored by or otherwise affiliated with KontrolFreek, when they are not.

76.     On information and belief, the infringing Cactus Jack Thumbsticks are still being offered for sale. *See* Exhibit F.

**FIRST CLAIM FOR RELIEF**
**(Copyright Infringement in Violation of 17 U.S.C. § 501)**

77.     KontrolFreek repeats and realleges the allegations in the preceding Paragraphs 1 through 76 of this Complaint as if fully set forth herein.

78.     The KontrolFreek Photographs constitute copyrightable subject matter under the copyright laws of the United States.

79.     KontrolFreek is the sole owner of copyright in the KontrolFreek Photographs.

80.     On August 24, 2020, KontrolFreek filed applications to register its copyright in two of the KontrolFreek Photographs as follows:

| Title | Registration No. |
|---|---|
| KontrolFreek Black Ops PS Perspective Photo | VA0002215100 |
| KontrolFreek Black Ops XB Perspective Photo | VA0002215096 |

81.     KontrolFreek is the sole owner of all right and title in U.S. Copyright Registration Nos. VA0002215100 and VA0002215096.

82. The effective date of registration for U.S. Copyright Registration Nos. VA0002215100 and VA0002215096 is August 24, 2020.

83. KontrolFreek has never authorized Defendants to copy, reproduce, display, create derivative works based on, or distribute unauthorized copies of the KontrolFreek Photographs.

84. On information and belief, Defendants, without KontrolFreek's license, authorization, or permission, reproduced, distributed, created derivative works based on, and exploited the KontrolFreek Photographs. Defendants reproduced and altered the copyright-protected KontrolFreek Photographs to create the Infringing Photographs, then publicly displayed and distributed the Infringing Photographs.

85. Defendants' Infringing Photographs are substantially or strikingly similar to, and infringe, the copyright-protected KontrolFreek Photographs.

86. On information and belief, Defendants had access to the KontrolFreek Photographs prior to the time that Defendants created the Infringing Photographs.

87. Defendants' actions violate KontrolFreek's exclusive rights in and to the original works of authorship embodied by the copyright-protected KontrolFreek Photographs under 17 U.S.C. § 106, including but not limited to, the

exclusive rights to reproduce, publicly display, and distribute copies of the works, and to prepare derivative works based upon the works.

88.     Defendants' actions have caused damage and continue to cause damage to KontrolFreek, in an amount to be proven at trial.

89.     Defendants' actions have caused Defendants to profit from their willful and intentional infringement of KontrolFreek's copyrights in the works.

90.     Defendants' actions and infringement of the copyright-protected KontrolFreek Photographs have caused, and unless enjoined by this Court, will continue to cause, irreparable injury to KontrolFreek's property and business, for which KontrolFreek has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
### (Copyright Infringement in Violation of 17 U.S.C. § 501)

91.     KontrolFreek repeats and realleges the allegations in the preceding Paragraphs 1 through 76 of this Complaint, inclusive, as if fully set forth herein.

92.     The KontrolFreek Packaging constitutes copyrightable subject matter under the copyright laws of the United States.

93.     KontrolFreek is the sole owner of copyright in the KontrolFreek Packaging.

94.     KontrolFreek is the sole owner of all right and title in a U.S. Copyright Registration for the KontrolFreek Packaging.

21

95.     On July 31, 2020, KontrolFreek filed an application to register its copyright in the KontrolFreek Packaging as follows:

| Title | Registration No. |
|---|---|
| KontrolFreek Vortex/BlackOps Packaging Artwork | VA0002212204 |

96.     The effective date of registration for U.S. Registration No. VA0002212204 is July 31, 2020.

97.     KontrolFreek has never authorized Defendants to copy, reproduce, publicly display, create derivative works based on, or distribute unauthorized copies of the copyright-protected KontrolFreek Packaging.

98.     On information and belief, Defendants, without KontrolFreek's license, authorization, or permission, reproduced, publicly displayed, distributed, created derivative works based upon, and exploited the copyright-protected KontrolFreek Packaging. Defendants reproduced and altered the KontrolFreek Packaging to create the Infringing Packaging, then publicly displayed and distributed the Infringing Packaging.

99.     The Infringing Packaging is substantially or strikingly similar to, and infringes, KontrolFreek's copyright in the KontrolFreek Packaging.

100.   On information and belief, Defendants had access to the copyright-protected KontrolFreek Packaging prior to the time that Defendants created the Infringing Packaging.

101.   Defendants' actions violate KontrolFreek's exclusive rights in and to the original work of authorship embodied in the KontrolFreek Packaging under 17 U.S.C. § 106, including but not limited to, the exclusive rights to reproduce, publicly display, and distribute copies of the work, and to prepare derivative works based upon, the copyright-protected KontrolFreek Packaging.

102.   Defendants' actions have caused damage and continue to cause damage to KontrolFreek, in an amount to be proven at trial.

103.   Defendants' actions have caused Defendants to profit from Defendants' infringement of KontrolFreek's copyrights in the work.

104.   Defendants' actions have caused Defendants to profit from the willful and intentional infringement of KontrolFreek's copyright in the work.

105.   Defendants' actions and infringement of the copyright-protected KontrolFreek Packaging have caused, and unless enjoined by this Court, will continue to cause, irreparable injury to KontrolFreek's property and business, for which KontrolFreek has no adequate remedy at law.

65733101v.8

## THIRD CLAIM FOR RELIEF
### (Trade Dress Infringement in Violation of 15 U.S.C. § 1125(a))

106.   KontrolFreek repeats and realleges the allegations contained in Paragraphs 1 through 76 of this Complaint as if fully set forth herein.

107.   KontrolFreek owns exclusive rights in the KontrolFreek Trade Dress, made up of the following elements: (a) a base with curved prongs; (b) a stem that is narrower than the base and top; (c) a base and stem that appear to be smooth and reflective; (d) a top that appears to be soft and non-reflective; (e) a circular top; (f) vibrant color on the top; (g) contrasting colors for the base and stem (for example, orange top contrasted with black base and stem or purple top contrasted with white base and stem); and (h) ornamentation or design on the top.

108.   The KontrolFreek Trade Dress is in use in connection with the KontrolFreek's thumbsticks throughout the United States, and was first used in commerce long before the infringing trade dress adopted by Defendants in the Cactus Jack Thumbsticks.

109.   Consumers recognize the KontrolFreek Trade Dress embodied in the KontrolFreek thumbsticks to indicate KontrolFreek as the exclusive source of the KontrolFreek thumbsticks.

110.   KontrolFreek's KontrolFreek Trade Dress is not functional and acts as a source indicator for KontrolFreek's thumbsticks.

111.   Defendants' Cactus Jack Thumbsticks embody the KontrolFreek Trade Dress.

112.   Defendants' infringing Cactus Jack Thumbsticks are confusingly similar to the KontrolFreek Trade Dress embodied in the KontrolFreek thumbsticks.

113.   On information and belief, consumers were actually confused about the source of Defendants' Cactus Jack Thumbsticks.

114.   On information and belief, consumers mistakenly believed that KontrolFreek was affiliated with Defendants or sponsored Defendants' Cactus Jack Thumbsticks, when that was not the case.

115.   On information and belief, consumers were disappointed by Defendants' customer service related to Defendants' Cactus Jack Thumbsticks, and believed that Defendants' Cactus Jack Thumbsticks were lower quality products than the thumbsticks that KontrolFreek is well-known for producing and selling.

116.   Defendants' use of the KontrolFreek Trade Dress constitutes the use in commerce of a word, term, name, symbol, or device, which use is likely to cause confusion, or to cause mistake or to deceive, as to the affiliation, connection, or association of Defendants with KontrolFreek, or as to the origin, sponsorship, or

approval of Defendants' Cactus Jack Thumbsticks by KontrolFreek, in violation of 15 U.S.C. § 1125(a).

117.   Defendants' adoption and use of the KontrolFreek Trade Dress constitutes false designations of origin of, and false representations about, Defendants' Cactus Jack Thumbsticks.

118.   Defendants have profited from their use and exploitation of the KontrolFreek Trade Dress.

119.   KontrolFreek never authorized Defendants to adopt or use the KontrolFreek Trade Dress.

120.   Defendants' actions have caused and continue to cause damages to KontrolFreek in an amount to be proven at trial.

121.   Defendants' actions have caused irreparable harm to KontrolFreek, for which KontrolFreek has no adequate remedy at law.

122.   Unless Defendants are enjoined from committing the unlawful acts alleged herein, including the unauthorized use in commerce of the Cactus Jack Thumbsticks, KontrolFreek will continue to suffer irreparable harm. Accordingly, KontrolFreek is entitled to injunctive relief pursuant to 15 U.S.C. § 1116 restraining Defendants, their officers, agents, and employees, and all other persons

65733101v.8

acting in concert with them, from engaging in any further act of infringement of the KontrolFreek Trade Dress in violation of the Lanham Act.

123.   Pursuant to 15 U.S.C. § 1117(a), KontrolFreek is also entitled to recover damages it has sustained and will sustain as a result of Defendants' wrongful conduct, which may be trebled according to the circumstances of the case.

124.   Defendants' conduct makes this an exceptional case under 15 U.S.C. § 1117(a), and thus KontrolFreek is entitled to an award of its attorneys' fees and costs.

## FOURTH CLAIM FOR RELIEF
### (False Representations in Violation of 15 U.S.C. § 1125(a))

125.   KontrolFreek repeats and realleges the allegations contained in Paragraphs 1 through 76 of this Complaint as if fully set forth herein.

126.   Defendants used the Infringing Photographs to advertise Defendants' Cactus Jack Thumbsticks for sale.

127.   The Infringing Photographs use and feature the KontrolFreek Trade Dress.

128.   Defendants, by using the KontrolFreek Trade Dress in Defendants' advertisements for Defendants' infringing Cactus Jack Thumbsticks, induced consumers into purchasing Defendants' infringing Cactus Jack Thumbsticks under

the mistaken impression that KontrolFreek was the source of, or endorsed the infringing Cactus Jack Thumbsticks, when that was not the case.

129.   Defendants' use of the Infringing Photographs and the KontrolFreek Trade Dress in this manner constitutes the use in commerce of a word, term, name, symbol, or device, which use is likely to cause confusion, or to cause mistake or to deceive, as to the affiliation, connection, or association of the Defendants with KontrolFreek, or as to the origin, sponsorship, or approval of Defendants' Cactus Jack Thumbsticks by KontrolFreek, in violation of 15 U.S.C. § 1125(a).

130.   Defendants' false representations have caused and continue to cause damages to KontrolFreek, in an amount to be proven at trial.

131.   On information and belief, Defendants have enjoyed substantial profits attributable to their false representations, profits that should be disgorged to KontrolFreek.

132.   Unless restrained or enjoined by this Court, Defendants will persist in their false representations, thereby causing KontrolFreek further irreparable harm.

133.   Defendants' false representations have caused and continue to cause irreparable harm to KontrolFreek for which KontrolFreek has no adequate remedy at law.

134.   Unless Defendants are enjoined from committing the unlawful acts alleged herein, including false representations in commerce, KontrolFreek will continue to suffer irreparable harm. Accordingly, KontrolFreek is entitled to injunctive relief pursuant to 15 U.S.C. § 1116 restraining Defendants, their officers, agents, and employees, and all other persons acting in concert with them, from engaging in any further false representations in violation of the Lanham Act.

135.   Pursuant to 15 U.S.C. § 1117(a), KontrolFreek is also entitled to recover damages it has sustained and will sustain as a result of Defendants' wrongful conduct, which may be trebled according to the circumstances of the case.

136.   Defendants' conduct makes this an exceptional case under 15 U.S.C. § 1117(a), and thus KontrolFreek is entitled to an award of its attorneys' fees and costs.

## FIFTH CLAIM FOR RELIEF
### (Deceptive Trade Practices in Violation of Georgia Law)

137.   KontrolFreek repeats and realleges the allegations in the preceding Paragraphs 1 through 76 of this Complaint, inclusive, as if fully set forth herein.

138.   Defendants' use of KontrolFreek's intellectual property has caused a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of Defendants' Cactus Jack Thumbsticks, and

furthermore has caused a likelihood of confusion or of misunderstanding for consumers as to affiliation, connection, or association with or certification by KontrolFreek, in violation of O.C.G.A. § 10-1-372.

139.   Defendants' deceptive trade practices have caused and continue to cause damages to KontrolFreek in an amount to be proven at trial.

140.   On information and belief, Defendants have enjoyed substantial profits attributable to their deceptive trade practices, profits that should be disgorged to KontrolFreek.

141.   Unless restrained and enjoined by this Court, Defendants will persist in their deceptive trade practices, thereby causing KontrolFreek further irreparable harm.

142.   Defendants' deceptive trade practices have caused and continue to cause irreparable harm to KontrolFreek, for which KontrolFreek has no adequate remedy at law.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff KontrolFreek prays for a judgment as follows:

1.      That the Court enter a judgment that Defendants have infringed KontrolFreek's copyright in the KontrolFreek Photographs;

65733101v.8

2.      That the Court enter a judgment that Defendants have infringed KontrolFreek's copyright in the KontrolFreek Packaging;

3.      That the Court permanently enjoin Defendants, and all persons in active concert or participation with Defendants, from further infringement of KontrolFreek's copyrights in the KontrolFreek Photographs and KontrolFreek Packaging, pursuant to 17 U.S.C. § 502;

4.      That the Court order the impounding and destruction of all infringing copies reproduced, used, or distributed by Defendants in violation of KontrolFreek's exclusive rights in and to the copyrights in the KontrolFreek Photographs and the KontrolFreek Packaging, pursuant to 17 U.S.C. § 503;

5.      That the Court order Defendants to pay KontrolFreek its actual damages and any profits that Defendants obtained, pursuant to 17 U.S.C. § 504;

6.      That the Court enter a judgment that Defendants' copyright infringement has been knowing and willful;

7.      That, pursuant to 15 U.S.C. § 1116(a) and O.C.G.A. § 10-1-373, the Court permanently enjoin and restrain Defendants from:

a)      Using the KontrolFreek Trade Dress or any trade dress or designation that is confusingly similar thereto, on or in connection with the advertisement, promotion, offering for sale, sale, or distribution of any

31

goods, on or in connection with the advertisement, promotion, offering for sale, sale, or rendition of any services, in connection with the conduct of any business, or as part of any domain name at any level;

b)   Assisting other parties in using the KontrolFreek Trade Dress for the advertisement, promotion, offering for sale, sale, or distribution of any goods, on or in connection with the advertisement, promotion, offering for sale, sale, or rendition of any services, in connection with the conduct of any business, or as part of any domain name at any level;

c)   Attempting to pass off Defendants' Cactus Jack Thumbsticks as products that have some affiliation, connection, or association with KontrolFreek, or creating the commercial impression that KontrolFreek approves of, sponsors, or is the origin of any of Defendants' products; and

d)   Otherwise competing unfairly with KontrolFreek.

8.   That the Court order Defendants, pursuant to 15 U.S.C. § 1118, to deliver to the Court for destruction or other disposition all labels, signs, prints, packages, wrappers, receptacles, advertisements, and copies of websites in hard copy and computer readable form, bearing any of the designations whose use is enjoined under the injunction prayed for herein, and all plates, molds, matrices, and other means of making the same;

9.      That the Court order Defendants to engage in corrective advertising to relieve harm already caused to KontrolFreek's reputation, including without limitation, an apology and corrective statement by Defendants issued on all relevant social media platforms and through other relevant entertainment and video game-related media outlets;

10.      That the Court order Defendants, pursuant to 15 U.S.C § 1116(a), to file with the Court and serve upon counsel for KontrolFreek, within thirty (30) days after service on Defendants of the injunctions prayed for herein, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunctions;

11.      That the Court order Defendants, pursuant to 15 U.S.C. § 1117(a), to pay to KontrolFreek the profits Defendants has collected and the damages sustained by KontrolFreek as a result of Defendants' infringement of the KontrolFreek Trade Dress, and that the amount be enhanced up to three times the amount of actual damages according to the exceptional circumstances of the case;

12.      That the Court order Defendants, pursuant to 15 U.S.C. § 1117(a), 17 U.S.C. § 512(f)(2), and O.C.G.A. § 10-1-373, to pay to KontrolFreek its attorneys' fees and costs;

13.     That the Court order Defendants to pay to KontrolFreek all other damages allowable by law or in equity; and

14.     That the Court grant to KontrolFreek such other and further relief as the Court may deem just and proper.

## JURY DEMAND

In accordance with Rules 38 and 39 of the Federal Rules of Civil Procedure, KontrolFreek asserts its rights and demands a trial by jury on all issues triable by a jury.

*[Signature of Counsel Appears on the Following Page]*

65733101v.8

Dated: September 18, 2020

Respectfully submitted,

SEYFARTH SHAW LLP

*/s/ Lauren M. Gregory*
Lauren M. Gregory
Georgia Bar No. 729061
lgregory@seyfarth.com
Becki C. Lee
Georgia Bar No. 167852
bclee@seyfarth.com
1075 Peachtree St. NE, Suite 2500
Atlanta, Georgia 30309
Telephone: (404) 885-1500

Lisa H. Meyerhoff*
lmeyerhoff@seyfarth.com
700 Milam St. #1400
Houston, TX 77002
Telephone: (713) 225-2300

*Attorneys for Plaintiff KontrolFreek, LLC*

**pro hac vice* application to be filed